IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY J. AGUILAR,

    Petitioner,

v.                                                                                                                          No. 2:20-cv-00362-RB-LF

DWAYNE SANTISTEVAN, Warden, and
HECTOR H. BALDERAS, Attorney General
of the State of New Mexico,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on petitioner Anthony J. Aguilar's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed April 20, 2020. Doc. 1. On December 10, 2020, I ordered Respondents to file an answer addressing both whether Mr. Aguilar had exhausted his state court remedies as well as the merits of his claims. Doc. 5. On February 17, 2020, Respondents filed an answer addressing only the merits of Mr. Aguilar's petition. Doc. 10. Senior United States District Judge Robert C. Brack referred this case to me pursuant to 28 U.S.C. §§ 636(b)(l)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 6. Having considered the parties' submissions, the relevant law, and the record in this case, I conclude that Mr. Aguilar included both exhausted and unexhausted claims in his federal habeas petition. Therefore, his application must be treated as a mixed petition. For the reasons discussed below, I recommend that the Court give Mr. Aguilar thirty (30) days after an order adopting the Proposed Findings and Recommended Disposition ("PFRD") to voluntarily dismiss

his unexhausted claims and proceed on his exhausted claims. If he does not dismiss his unexhausted claims, I recommend that the Court dismiss his entire petition without prejudice.

## I. Background and Procedural Posture

On September 19, 2016, Mr. Aguilar was indicted in the Second Judicial District Court for the State of New Mexico on numerous charges stemming from a physical altercation that occurred on March 21, 2015, at the home of Mr. Aguilar's ex-girlfriend. Doc. 10-1 at 1–6.[1] On July 17, 2017, Mr. Aguilar pled guilty to second-degree aggravated burglary (deadly weapon) (Count 1), third-degree aggravated battery with a deadly weapon (Count 2), third-degree child abuse recklessly caused with no death or great bodily harm (Count 7), fourth-degree conspiracy to commit aggravated battery (Count 8), and fourth-degree aggravated assault with a deadly weapon (Count 9). *Id*. at 10–14. Under the terms of the plea agreement, the government dismissed the remaining charges against Mr. Aguilar. *Id*. at 12. The plea agreement included no agreement as to Mr. Aguilar's sentence, but specified that his sentencing exposure was between zero and eighteen years imprisonment. *Id*. at 11.

The plea agreement included language attesting that Mr. Aguilar had read and understood the terms of the agreement, that he had discussed his case and constitutional rights with his attorney prior to entering into the agreement, and that he understood the constitutional rights he was giving up by pleading guilty. *Id*. at 13. Further, counsel for Mr. Aguilar signed the plea agreement after stating that:

> I have discussed this case with my client in detail and have advised the defendant of defendant's constitutional rights and all possible defenses. I believe that the plea and disposition set forth herein are appropriate under the facts of this case. I agree with the plea outlined in this agreement and its terms and conditions.

---

[1] Document 10-1 contains the exhibits attached to Respondents' Answer to Anthony J. Aguilar's *Pro Se* Petition for Writ of Habeas Corpus (28 U.S.C. § 2254). *See* Doc. 10-1. The Court cites to the CM/ECF pagination rather than any internal page numbers in the exhibits.

*Id*. at 14.

At Mr. Aguilar's change of plea hearing on July 17, 2017, the state district court questioned Mr. Aguilar regarding his understanding of the plea agreement. *Id*. at 20–28. Mr. Aguilar confirmed the terms of the agreement, including that the range of his sentence was "zero to 18 years." *Id*. at 21–22. Mr. Aguilar indicated that he had reviewed the plea agreement with his attorney, that she had answered any questions he had concerning the agreement, and that he was satisfied with his attorney's explanation and advice on the case. *Id*. at 21, 26. Mr. Aguilar testified that no one had threatened, coerced, or otherwise forced him to accept the plea agreement, and that no promises, other than those that were listed in the agreement, were made to get him to plead guilty. *Id*. at 23. Mr. Aguilar also testified that he was knowingly and voluntarily giving up his constitutional rights by pleading guilty. *Id*. at 24–25. Mr. Aguilar stated that he had no questions for his attorney or the court, and then changed his plea to guilty on the relevant counts. *Id*. at 26–27. After taking Mr. Aguilar's plea, the court concluded that it would "accept the stipulations and find that [the] plea has been entered knowingly and voluntarily by Mr. Aguilar and [that] it was entered into on his own free will, not the result of any threats or promises other than what's contained within the Plea and Disposition Agreement." *Id*. at 28.

On October 6, 2017, counsel for Mr. Aguilar filed a sentencing memorandum in which she requested that Mr. Aguilar be sentenced to a term of five years' supervised probation with a conditional discharge on grounds that he: (1) lacked a felony or violent criminal history; (2) was remorseful and accepted responsibility early on for his conduct; (3) had a network of friends who had written letters of support on his behalf; and (4) posed no threat to the community, as evidenced by the fact that he had been on conditions of release for over two years since the

underlying incident. *Id*. at 32–35. In addition, defense counsel represented that Mr. Aguilar was "seriously intoxicated and mentally impaired" the night of the incident, referring to it as "an alcohol-induced event stemming from a family feud" and an "isolated instance of violence due to extreme alcohol consumption." *Id*. at 32, 34, 37. Counsel noted that Mr. Aguilar admitted having an alcohol problem and was now attending counseling and alcoholic anonymous ("AA") meetings. *Id*. at 36. An attendance form attached to the sentencing memorandum indicated that Mr. Aguilar had attended several AA meetings and anger management groups. *Id*. at 58–60. The sentencing memorandum also included a letter from Mr. Aguilar in which he stated that on the night of the incident, he was "very, very intoxicated which triggered [an] emotional outbreak," and his "extreme state of drunkenness[] caused [him] to think and act irrationally." *Id*. at 48.

At Mr. Aguilar's sentencing hearing held on October 6, 2017, the prosecution provided the following summary regarding the underlying incident: Mr. Aguilar and April Hale[2] were previously in a relationship.[3] *Id*. at 84. On the evening of March 21, 2015, Ms. Hale had dinner at home with her two sons, her nephew, her daughter, and her daughter's boyfriend. *Id*. at 88. Ms. Hale's nephew was loading dishes into the dishwasher while Ms. Hale and her daughter were sitting at the dinner table when Mr. Aguilar entered the home with three other individuals. *Id*. All four individuals were masked and carrying bats. *Id*. Mr. Aguilar went to Ms. Hale's home because he believed her sons had stolen tools from him. *Id*. at 83–84. A physical altercation ensued which resulted in injuries to Ms. Hale's nephew, daughter, and minor son. *Id*.

---

[2] Ms. Hale stated her name was April Archibeque at the sentencing hearing. *See* Doc. 10-1 at 76.

[3] The parties disputed the status of Mr. Aguilar and Ms. Hale's relationship. The state claimed that the two stopped dating months before the incident, but Mr. Aguilar maintained that he and Ms. Hale were still dating at the time and continued their relationship for at least a year after the incident. *Id*. at 84, 98.

at 88–90.  Ms. Hale, her daughter, and her nephew each addressed the court during the sentencing hearing.  *Id*. at 75–82.

Mr. Aguilar also addressed the court during his sentencing, explaining that he was really intoxicated that evening and had not intended to hurt anyone.  *Id*. at 100.  Defense counsel echoed Mr. Aguilar's statements, reiterating that Mr. Aguilar's intoxication impaired his ability to reason and think clearly.  *Id*. at 92, 94.  Defense counsel argued that a term of five years supervised probation with a conditional discharge was an appropriate sentence because Mr. Aguilar:  1) had done well on pretrial supervision and release; 2) made no contact with the victims in the two years since the incident; and 3) was remorseful and was attending AA meetings as well as anger management counseling.  *Id*. at 92–99.

The district court was not persuaded by defense counsel's sentencing argument.  The court sentenced Mr. Aguilar to eighteen years in prison with eight years suspended, for an actual term of imprisonment of ten years, followed by five years of supervised probation and two years parole after release.  *Id*. at 61; 64–65.  In addition, the court found Count 2 to be a "mandatory violent offense" and found Counts 7 and 9 to be serious violent offenses "based on facts presented at the hearing that [Mr. Aguilar] came with a group, they were armed with bats, they were disguised, they caused both physical and emotional damage to the victims involved, and they entered the residence with the intent to injure anyone in the home."  *Id*. at 63–64.  Accordingly, the court designated the first seven and one-half years of the term of imprisonment as "serious violent offense time."  *Id*. at 64.

On December 19, 2017, counsel for Mr. Aguilar filed a motion seeking reconsideration of his sentence.  *Id*. at 66–72.  In the motion, defense counsel requested that Mr. Aguilar's sentence be reduced to a term of five years' imprisonment based on reasons similar to those previously

raised in the sentencing memorandum—that Mr. Aguilar did not have a felony criminal history, was remorseful, and was seeking treatment for his alcoholism. *Id*. On December 22, 2017, the state filed a response in opposition to Mr. Aguilar's motion for reconsideration. *Id*. at 152–55. On March 7, 2018, Mr. Aguilar withdrew his motion for reconsideration.[4] *Id*. at 157.

Over the ensuing two years, Mr. Aguilar filed multiple *pro se* habeas petitions in state district court, a motion to reconsider his sentence, a motion seeking to withdraw his guilty plea, a docketing statement in the New Mexico Court of Appeals, and multiple petitions for writ of certiorari in the New Mexico Supreme Court. Mr. Aguilar's first post-conviction habeas filing was a state habeas petition filed in district court on May 16, 2018, in which he raised a claim for ineffective assistance of counsel arguing that his attorney

1) made misrepresentations about the terms of the plea agreement;

2) had him sign a plea agreement but he did not know what he was signing;

3) failed to "put enough effort into my defense" by failing to investigate correspondence with April Hale that confirmed he continued to have a relationship with her after the incident; and

4) failed to provide him with an itemized receipt.

*Id*. at 165–66. Mr. Aguilar also contends that he was not provided due process and was maliciously prosecuted, but he did not provide the bases for these contentions. *See id*. at 167. The district court dismissed this habeas petition on August 13, 2018, finding that Mr. Aguilar had "not stated a cognizable claim for relief." *Id*. at 193.

---

[4] Mr. Aguilar explains that he withdrew the motion for reconsideration because his attorney, Amy Sirignano, "quit on me because I expressed frustration with her representation. She then filed for Substitution of Couns[e]l in January of 2018 and the Public Defender Brittany Maldonado was reassigned to my case. Ms. Maldonado did not pursue the motion to reconsider." Doc. 10-1 at 166–67.

Mr. Aguilar next filed a petition for writ of certiorari in the New Mexico Supreme Court on October 25, 2018. *Id*. at 194–99. Mr. Aguilar argued in the petition that he received ineffective assistance of counsel because his attorney misled him into signing the plea agreement. *Id*. at 195. He was under the impression that he would receive a 0 to 5-year sentence and the possibility of a conditional discharge. *Id*. at 195, 197. Mr. Aguilar further argued to the New Mexico Supreme Court that he had a plausible defense.[5] *Id*. at 197–98. On October 31, 2018, the New Mexico Supreme Court denied the petition. *Id*. at 238.

On April 19, 2019, Mr. Aguilar filed a second habeas petition in district court. *Id*. at 239–324. In this second petition, Mr. Aguilar argued:

1) ineffective assistance of counsel during the plea proceedings and sentencing because his attorney

   a) "coerced, tricked, and misled" him into taking the plea;
   b) failed to investigate his diminished capacity and intoxication, and failed to have him evaluated for a mental impairment; and
   c) he was under duress;

2) his plea was unknowing and involuntary because he did not intend to take a plea that exposed him to a term of imprisonment above five years;

3) had he known the court was going to sentence him to ten years' imprisonment, he would have gone to trial and raised clean hands, mental impairment or diminished capacity, and intoxication as defenses;

4) the victims took advantage of him and robbed him, and April Hale continued to date him; and

5) there was a disparity in sentencing.

*Id*. at 239–50. On June 18, 2019, the district court summarily dismissed Mr. Aguilar's second habeas petition, finding that he was not entitled to relief as a matter of law. *Id*. at 333.

---

[5] Mr. Aguilar described his plausible defense as "the victims['] hands were dirty." Doc. 10-1 at 198. He explained that "April Hale's children stole $4000.00 cash and some valuable tools from the petitioner." *Id*. at 195.

7

Following this denial, Mr. Aguilar filed a pro se motion for reconsideration of his sentence on July 1, 2019. *Id*. at 334. The motion was virtually identical to the reconsideration motion previously filed by defense counsel on December 19, 2017, and later withdrawn, except that in his *pro se* motion, Mr. Aguilar also argued that he pled guilty "due to counsel's misdirection," and that Ms. Hale's statements at the sentencing hearing were coached and rehearsed. *Id*. at 338, 341. On July 15, 2019, the district court denied Mr. Aguilar's motion to reconsider. *Id*. at 372.

On September 9, 2019, Mr. Aguilar filed a petition for a writ of certiorari in the New Mexico Supreme Court, seeking review of the denial of his second habeas petition. *Id*. at 373–84. Mr. Aguilar argued that his attorney provided ineffective assistance because she

1) forced him into a plea agreement by advising him to sign the plea agreement that did not include a sentence of 0 to 5 years;

2) failed to file a timely motion to continue the trial; and

3) lacked due diligence.

*Id*. at 375. On September 17, 2019, the New Mexico Supreme Court denied Mr. Aguilar's petition. *Id*. at 385.

Mr. Aguilar then returned to state district court and filed a motion to withdraw his plea on grounds of ineffective assistance of counsel. *Id*. at 391–94. In his motion, Mr. Aguilar alleged that he did not want to sign the plea agreement, but his attorney told him to sign it and she would "fix it" at sentencing. *Id*. at 393. The district court initially entered a form order denying the motion on December 2, 2019. *Id*. at 427. On December 19, 2019, however, the court entered another order in which it construed the motion to withdraw as a state habeas petition and directed the post-conviction habeas unit of the public defender's office to file a pre-appointment review notice. *Id*. at 430–31. The district court entered an order denying Mr. Aguilar's motion to

withdraw his guilty plea, which it had construed as a habeas petition, on February 18, 2020. *Id*. at 440.

Meanwhile, Mr. Aguilar filed a docketing statement in the New Mexico Court of Appeals on January 23, 2020. *Id*. at 432–36. Mr. Aguilar indicated that he was appealing the district court's December 2, 2019 denial of his motion to withdraw his plea. *Id*. at 432. In his docketing statement, Mr. Aguilar argued that he received ineffective assistance because his attorney

1) misled him about sentencing provisions in the plea agreement and misled him into signing the plea agreement under duress;

2) deceived him into hiring her because she was a "white collar crime lawyer not a criminal defense lawyer" and lacked familiarity with sentencing guidelines and criminal law;

3) failed to adequately investigate his case and was unprepared for trial;

*Id*. at 433–35. In addition, Mr. Aguilar argued that the district court erroneously construed his motion to withdraw as a habeas petition. *Id*. at 435. Given the nature of the relief requested and the procedural posture of the case, the New Mexico Court of Appeals determined that it lacked subject matter jurisdiction and transferred the docketing statement to the New Mexico Supreme Court. *Id*. at 525–26. Upon accepting the filing as a Rule 12-501 NMRA proceeding, the New Mexico Supreme Court denied the petition. *Id*. at 527–28.

On February 27, 2020, Mr. Aguilar filed a third petition for writ of certiorari in the New Mexico Supreme Court. *Id*. at 447–77. Mr. Aguilar again raised ineffective assistance of counsel, alleging that his counsel had forced him into a plea agreement and erroneously advised him to accept the plea. *Id*. at 448–50. He also accused his attorney of failing to file a motion for a continuance. *Id.* at 448. This petition was denied by the New Mexico Supreme Court on March 4, 2020. *Id*. at 478.

Mr. Aguilar then filed a fourth petition for writ of certiorari on March 5, 2020.[6] *Id*. at 479. Although it appears Mr. Aguilar intended to file the petition in the New Mexico Supreme Court, the petition was docketed in the state district court. *Id*. The district court docket does not show any action taken on the petition. *Id*. at 533.

On April 20, 2020, Mr. Aguilar filed the § 2254 federal habeas petition that is presently before this Court. Doc. 1. Mr. Aguilar asserts three grounds for habeas relief. Ground One is entitled "Ineffective Assis[]tance of Counsel." *Id*. at 5. Ground Two is entitled "Diminished Responsibility and Intoxication." *Id*. at 7. Ground Three is entitled "Vindictive Prosecution." *Id*. at 8. All three grounds raise claims that criticize Mr. Aguilar's counsel, and the Court construes them all as claims for ineffective assistance.[7] While Mr. Aguilar's petition is not a model of clarity, the Court finds that Mr. Aguilar claims his counsel was ineffective because she

1) did not pursue the defense discussed with him;

2) did not know how to adequately represent him because she was not a criminal defense lawyer;

---

[6] There is one more certiorari proceeding in the record, stemming from Mr. Aguilar's motion for an extension of time in which to file a petition for writ of certiorari with respect to the state district court's dismissal of his second habeas petition. Doc. 10-1 at 386. By the time the Supreme Court docketed this motion on November 13, 2019, Mr. Aguilar already had filed a new certiorari petition challenging the dismissal of his second habeas petition. *See id*. at 373–84 (certiorari petition dated September 9, 2019). The New Mexico Supreme Court eventually dismissed the case created in connection with its granting of Mr. Aguilar's motion for extension, citing his "failure to perfect the appeal." *Id*. at 441.

[7] In his "Vindictive Prosecution" claim, Mr. Aguilar alleges that "Petitioner was not given adequate representation and not given the opportunity to receive a plea bargain that was knowingly agreeable. Petitioner does not feel that he was given adequate counsel to understand and receive a will represented Plea Bargain." Doc. 1 at 9. Respondents interpret this claim as a reference to the State's request for a 13-year term of imprisonment after Mr. Aguilar rejected a different plea offer that "he claims would have resulted in 7 years' incarceration." Doc. 10 at 18. The Court does not adopt this interpretation. Mr. Aguilar's allegations reference "adequate representation" and "adequate counsel," not actions attributed to the State. Accordingly, the Court construes Mr. Aguilar's claim for "Vindictive Prosecution" as a claim for ineffective assistance.

3) did not file the proper motions in a timely manner and did not prepare an adequate plea;

4) did not provide an accounting of his funds upon termination of the attorney/client relationship;

5) failed to pursue or raise diminished responsibility and intoxication at his sentencing and failed to present his blood alcohol levels at the sentencing hearing;

6) did not adequately represent him/failed to counsel him so that he did not understand the plea or knowingly agree to it.

Doc. 1 at 5–8.

On December 10, 2020, I ordered Respondents to file an answer addressing both exhaustion and the merits of Mr. Aguilar's petition. Doc. 5. Respondents were ordered to address whether Mr. Aguilar exhausted his state court remedies and how to proceed if the petition was mixed. *Id*. at 1–2. Respondents also were ordered to specifically address whether Mr. Aguilar's plea was knowing and voluntary, and whether Mr. Aguilar received ineffective assistance of counsel. *Id*. at 2. If so, Respondents were directed to address whether Mr. Aguilar can raise independent claims related to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Id*. Respondents filed their answer on February 17, 2021. Doc. 10. In their answer, Respondents did not address whether Mr. Aguilar had exhausted his state court remedies. Nevertheless, I find that some of Mr. Aguilar's claims are not exhausted, and I address this issue despite Respondents' failure to do so.

**II.    Exhaustion of State Court Remedies**

The provisions of 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. Under 28 U.S.C. § 2254, a state prisoner generally must exhaust available state court remedies before a federal court can consider the prisoner's habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A) (A federal

district court may not consider the merits of a habeas petition brought pursuant to 28 U.S.C. § 2254 unless the petitioner "has exhausted the remedies available in the courts of the State.");[8] *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.").

"The [exhaustion] doctrine reflects the policies of comity and federalism between the state and federal governments, a recognition that it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997) (citations and quotation omitted). A petitioner exhausts a federal issue if he or she has properly presented the issue "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted). In addition, the petitioner must "fairly present his or her claims to the state courts before a federal court will examine them," which means that the "substance of the claim" must have been raised before the state court either on appeal or in post-conviction proceedings. *Id.*; *Demarest*, 130 F.3d at 932 (citation and quotation omitted). While a petitioner may present "bits of evidence" to a federal court that were not presented to the state court, "evidence that places the claims in a significantly different legal posture must first be presented to the state courts." *Demarest*, 130 F.3d at 932 (citation and quotation omitted). A petitioner has not exhausted his state court remedies if he still "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C.

---

[8] A federal court may review a petitioner's unexhausted claims if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). Mr. Aguilar has not argued—and the record does not indicate—that either of these situations are present in this case.

§ 2254(c). The exhaustion requirement applies to both unexhausted claims, and portions of claims. *Jernigan v. Jaramillo*, 436 F. App'x 852, 855–56 (10th Cir. 2011) (unpublished). "[T]he crucial inquiry is whether the substance of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (internal citation and quotation omitted).

Habeas petitions that contain both exhausted and unexhausted claims are called "mixed" petitions. *Pliler v. Ford*, 542 U.S. 225, 227 (2004). Mr. Aguilar has filed a mixed petition, as explained more fully below. Federal "district courts may not adjudicate mixed petitions." *Fairchild v. Workman*, 579 F.3d 1134, 1155 (10th Cir. 2009) (quoting *Rhines v. Weber*, 544 U.S. 269, 273 (2005)).

### III.   Analysis

Mr. Aguilar has exhausted only three of his ineffective assistance of counsel claims brought before this Court. First, he has exhausted claim 2—that his attorney did not know how to adequately represent him because she was not a criminal defense lawyer. This claim was raised in his docketing statement on January 23, 2020, filed in the New Mexico Court of Appeals. Doc. 10-1 at 433. The docketing statement was transferred to the New Mexico Supreme Court, which denied a writ of certiorari on November 30, 2020. Doc. 10-1 at 525–27. Mr. Aguilar also has exhausted claim No. 3—that his attorney did not file the proper motions in a timely manner and did not prepare an adequate plea. This claim was presented in his third petition for writ of certiorari to the New Mexico Supreme Court on February 27, 2020. *Id.* at 448. The New Mexico Supreme Court denied this petition on March 4, 2020. *Id.* at 478.

Finally, Mr. Aguilar has exhausted claim 6—that his attorney did not adequately represent him/failed to counsel him so that he did not understand the plea or knowingly agree to it. With regard to claim 6, Mr. Aguilar explains that his attorney, Ms. Sirignano, told him she would pursue a conditional discharge and a 5-year term of probation. Doc. 1 at 15. He further asserts that, when he was presented with the plea agreement that indicated a 0 to 18-year sentence, Ms. Sirignano told him to "just sign it and that she would fix it later." *Id*. at 16. He alleges that Ms. Sirignano told him that he would not receive an 18-year sentence. *Id*. Mr. Aguilar ultimately was sentenced to 18 years, with 10 years of incarceration and 8 years suspended. Doc. 10-1 at 62–65. He contends that Ms. Sirignano misinformed him about the consequences of his plea. Doc. 1 at 15–17. Mr. Aguilar raised this claim in some form or another in each of his petitions before the New Mexico Supreme Court. *See* Doc. 10-1 at 375, 433, 448–50.

Mr. Aguilar has not exhausted the other ineffective assistance of counsel claims he raises in his federal habeas petition. Mr. Aguilar did not "properly present" claims 1, 4, or 5 in his federal habeas petition "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever*, 36 F.3d at 1534.

> Although petitioner raised an ineffective assistance of counsel claim on direct appeal, he based it on different reasons than those expressed in his habeas petition. Indeed, petitioner has not properly raised before the state courts any of the bases upon which his current ineffective assistance of counsel claims rely. Thus, petitioner has failed to exhaust his ineffective assistance of counsel claims.

*Smallwood v. Gibson,* 191 F.3d 1257, 1267 (10th Cir. 1999).

Although Mr. Aguilar raised claim Nos. 1, 4, and 5 in his habeas petitions and his motion for reconsideration of his sentence, he failed to present them to the New Mexico Supreme Court. Mr. Aguilar did not present claim No. 1—that his attorney was ineffective for failing to present

14

"the defense discussed with him"—in any prior proceedings in state court. In his filings in state court, Mr. Aguilar argues that his attorney did not present the defenses of "clean hands," or his mental impairment or diminished capacity and intoxication defenses. *See* Doc. 10-1 at 198, 239–240, 249, 251–52. He fails to identify, however, which defense his attorney discussed with him but failed to present in state court. The Court will not speculate about what defense Mr. Aguilar's attorney discussed with him but failed to present to the state court. The Court cannot proceed with this claim because Mr. Aguilar fails to state with particularity the grounds for seeking habeas corpus based on these allegations. *See Mayle v. Felix*, 545 U.S. 644, 645 (2005) ("The original pleading in a habeas proceeding is the petition as initially filed. That pleading must specify all the grounds for relief available to the petitioner and state the facts supporting each ground.") (internal quotations and citations omitted); FED. R. CIV. P. 7(b) (Generally, "[a] request for a court order must be made by motion. The motion must . . . state with particularity the grounds for seeking the order.").

Mr. Aguilar raised claim 4—that his attorney did not present him with an itemized receipt—in his first habeas petition filed on May 16, 2018. Doc. 10-1 at 167. He also raised claim 5—that his attorney failed to pursue the defenses of diminished responsibility and intoxication at his sentencing—in his second habeas petition filed on April 19, 2019. Doc. 10-1 at 239. He did not, however, present either of these arguments "to the highest state court." *Dever*, 36 F.3d at 1534. These claims, therefore, are not exhausted.

## IV.   Mixed Petition

As discussed above, Mr. Aguilar has filed a mixed petition containing both exhausted and unexhausted claims. This Court has limited options when presented with a mixed petition:

> (1) dismiss the mixed petition in its entirety . . . ; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted

15

> claims . . . ; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims . . . ; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit . . . .

*Fairchild v. Workman,* 579 F.3d 1134, 1156 (10th Cir. 2009) (internal citations omitted).

I do not recommend dismissal of the mixed petition in its entirety. Those in custody pursuant to the judgment of a state court have a one-year statute of limitations to file a federal habeas claim. *See* 28 U.S.C. § 2244(d). Federal habeas petitions do not toll the limitations period. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). If the Court were to dismiss the current habeas petition to allow Mr. Aguilar to exhaust his claims in state court, his application would be time-barred were he to try to return to federal court. *See, e.g.*, *Rhines v. Weber*, 544 U.S. 269, 274–75 (2005) ("Although the limitations period is tolled during the pendency of a 'properly filed application for State post-conviction or other collateral review,' § 2244(d)(2), the filing of a petition for habeas corpus in federal court does not toll the statute of limitations") (citing *Duncan*, 533 U.S. at 181–82). Thus, dismissing Mr. Aguilar's petition would push this case well past the limitations period.

Similarly, the "stay and abeyance" mechanism is not appropriate in this case. This method is only available if petitioner can: (1) show good cause for failing to exhaust his claims in state court; and (2) show that his unexhausted claims are not "plainly meritless." *Rhines*, 544 U.S. at 277. Mr. Aguilar has presented no argument that there is "good cause" to excuse his failure to present his unexhausted claims to the state court, and nothing in the pleadings before the Court points to the existence of the requisite good cause.

Respondents failed to brief the exhaustion requirement, effectively asking the Court to ignore the exhaustion requirement altogether and deny the petition on the merits. *See* Doc. 10. The Court finds that the better course is the third option because it provides Mr. Aguilar "with

the choice of returning to state court to exhaust his claims or amending . . . the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

V.   **Procedural Default**

In general, "when a habeas petitioner has failed to exhaust his state court remedies, a federal court should dismiss the petition without prejudice so that those remedies may be pursued." *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997) (citation omitted). However, if the state court would not entertain the petitioner's unexhausted claims because of a procedural bar, "there is a procedural default for the purpose of federal habeas review."[9] *Id.* Procedural default occurs only if the state court would refuse to hear the claim based on an "independent and adequate state procedural ground." *Smallwood*, 191 F.3d at 1268. To be independent, a state ground must "rely on state law rather than federal law." *Id.* To be adequate, a state ground must be "strictly or regularly followed and applied evenhandedly to all similar claims." *Id.* (citation and quotation marks omitted); *see also Walker v. Martin*, 562 U.S. 307, 316 (2011) (stating that state grounds must be "firmly established and regularly followed" to be adequate).

The Court finds Mr. Aguilar's unexhausted claims are not procedurally defaulted. Respondents do not argue that any of Mr. Aguilar's claims are procedurally defaulted. *See* Doc. 10. Mr. Aguilar may be able to raise the claims he has not yet presented to the New Mexico state courts in a state habeas petition. There is no statute of limitations in New Mexico that would prevent him from filing another state habeas petition. *See State v. Sutphin*, 2007-NMSC-045, ¶ 12, 142 N.M. 191, 195, 164 P.3d 72, 76. Ordinarily, "New Mexico state courts will not consider any issues raised in a second post-conviction proceeding which could have been raised

---

[9] A federal court may apply an "anticipatory procedural bar" to "an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002).

in the first proceeding." *Harris v. Williams*, 5 F. App'x 831, 833 (10th Cir. 2001) (unpublished) ("[G]rounds omitted in the prior proceedings are deemed waived.") (quoting *State v. Gillihan*, 1974-NMSC-060, ¶ 10, 86 N.M. 439, 440, 524 P.2d 1335, 1336). However, "[t]here is a narrow exception to this . . . waiver rule when the petitioner asserts 'fundamental error' in his trial." *Id*. (citing *Gillihan*, 1974-NMSC-060, ¶ 11, 86 N.M. 439, 440, 524 P.2d 1335, 1336). Thus, New Mexico courts may find that Mr. Aguilar's unexhausted claims are not precluded from review under the doctrine of fundamental error. Because there is still a possibility of state review of these claims, in the interest of comity, the Court finds that these claims are not procedurally defaulted. *See, e.g., Demarest*, 130 F.3d at 939 (stating that courts should generally choose the option of allowing petitioner to exhaust state remedies when those claims are not procedurally barred); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (explaining that both the exhaustion requirement and the doctrine of procedural default are "grounded in principles of comity," and that "in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights"); *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (advising federal courts to exercise caution before finding a claim procedurally barred where the possibility of state review exists "even if it is not likely that the state court will consider petitioner's claim on the merits"); *Burgin v. Broglin*, 900 F.2d 990, 995 (7th Cir. 1990) (finding that where uncertainty exists regarding the availability of state remedies and further exhaustion is required, the better course is to require petitioner to explore the possibility that state remedies exist).

## RECOMMENDED DISPOSITION

For the reasons discussed above, I recommend the Court allow Mr. Aguilar to amend his petition to include only his exhausted claims. If Mr. Aguilar chooses not to amend his petition, I

recommend that the Court dismiss his petition in its entirety without prejudice. If Mr. Aguilar chooses not to amend his petition, he should bear in mind that the one-year statute of limitations applies to all of the exhausted grounds in his petition, and any future federal habeas petitions on these grounds likely would be time barred.

      Mr. Aguilar has exhausted only the following three claims:

      2) his attorney was ineffective because she did not know how to adequately represent him because she was not a criminal defense lawyer;

      3) his attorney was ineffective because she did not file proper motions in a timely manner and did not prepare an adequate plea; and

      6) his attorney was ineffective because she did not adequately represent him/failed to counsel him so that he did not understand the plea or knowingly agree to it.

All of Mr. Aguilar's remaining claims are not exhausted. If Mr. Aguilar wishes to proceed with his habeas petition solely on his three exhausted claims, he must file a document so stating within thirty (30) days of the Court adopting this recommendation. If he fails to timely file a document voluntarily dismissing his unexhausted claims within thirty (30) days of the Court adopting this recommendation, I recommend that the Court dismiss his entire petition without prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge