IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY J. AGUILAR,

   Petitioner,

v.                                                                                               No. 2:20-cv-00362-RB-LF

DWAYNE SANTISTEVAN, Warden, and
HECTOR H. BALDERAS, Attorney General
of the State of New Mexico,

   Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Anthony Aguilar's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus filed on April 20, 2020. Doc. 1. On December 10, 2020, the Court ordered defendants to answer. Doc. 5. Defendants filed their answer on February 17, 2021. Doc. 10. On September 22, 2021, I recommended that the Court allow Mr. Aguilar to amend his petition to include only his exhausted claims. Doc. 11. The Honorable Senior Judge Robert C. Brack adopted my recommendation on November 19, 2021. Doc. 14. On December 1, 2021, Mr. Aguilar notified the Court that he wished to proceed with his exhausted claims. Doc. 15. Mr. Aguilar did not file a reply to defendants' answer, and the time to do so has now passed.[1] Judge Brack referred this case to me "to conduct hearings, if warranted, including

---

[1] The Court originally neglected to set a deadline for Mr. Aguilar to file a reply as required by Rule 5(e) of the Rules Governing Section 2254 Cases. When it recognized this error, the Court gave Mr. Aguilar through Tuesday, July 11, 2023, to file a reply. Doc. 19. The Court's order was returned to the Court as undeliverable on June 30, 2023. Doc. 20. An inmate search on the State of New Mexico inmate locator website shows that Mr. Aguilar is no longer an inmate at the Western New Mexico Correctional Facility in Grants, New Mexico (the address that was listed on the docket), but is an inmate at the Lea County Correctional Facility in Hobbs, New Mexico. https://www.cd.nm.gov/offender-search/ (last visited 7/12/2023). Although Mr. Aguilar had not

evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 6.  Having reviewed the petition, the answer, the record, and the relevant law, I recommend that the Court deny Mr. Aguilar's petition and deny a certificate of appealability.

I. **Background Facts and Procedural Posture**

On September 16, 2016, a grand jury returned a 16-count indictment against Mr. Aguilar stemming from a physical altercation that occurred on March 21, 2015, at the home of Mr. Aguilar's ex-girlfriend.  Doc. 10-1 at 1–6.[2]  On July 17, 2017, Mr. Aguilar pled guilty to second-degree aggravated burglary (deadly weapon) (Count 1), third-degree aggravated battery with a deadly weapon (Count 2), third-degree child abuse recklessly caused with no death or great bodily harm (Count 7), fourth-degree conspiracy to commit aggravated battery (Count 8), and fourth-degree aggravated assault with a deadly weapon (Count 9).  *Id*. at 10–14.  Under the terms of the plea agreement, the government dismissed the remaining charges against Mr. Aguilar.  *Id*. at 12.  The plea agreement included no agreement as to Mr. Aguilar's sentence but specified that his sentencing exposure was between zero and eighteen years of imprisonment.  *Id*. at 11.

The plea agreement included language attesting that Mr. Aguilar had read and understood the terms of the agreement, that he had discussed his case and constitutional rights with his

---

notified the Clerk of Court regarding his current address as required by D.N.M.LR-Civ. 83.6, the Court directed the Clerk to send a copy of the order for a reply (Doc. 19) to Mr. Aguilar at the Lea County Correctional Facility.  Doc. 21.  On July 12, 2023, Mr. Aguilar filed a change of address indicating that he is indeed at the Lea County Correctional Facility, and has been since June 29, 2023.  Doc. 23.  Mr. Aguilar did not, however, file a reply by the deadline, nor did he ask for an extension of time.

[2] Document 10-1 contains the exhibits attached to Respondents' Answer to Anthony J. Aguilar's *Pro Se* Petition for Writ of Habeas Corpus (28 U.S.C. § 2254).  *See* Doc. 10-1.  The Court cites to the CM/ECF pagination rather than any internal page numbers on the exhibits.

attorney prior to entering into the agreement, and that he understood the constitutional rights he was giving up by pleading guilty. *Id*. at 13. Mr. Aguilar's counsel signed the plea agreement after stating that:

> I have discussed this case with my client in detail and have advised the defendant of defendant's constitutional rights and all possible defenses. I believe that the plea and disposition set forth herein are appropriate under the facts of this case. I agree with the plea outlined in this agreement and its terms and conditions.

*Id*. at 14.

At Mr. Aguilar's change of plea hearing on July 17, 2017, the state district court judge questioned Mr. Aguilar regarding his understanding of the plea agreement. *Id*. at 20–28. Mr. Aguilar confirmed the terms of the agreement, including that the range of his sentence was "zero to 18 years." *Id*. at 21–22. Mr. Aguilar testified that he had reviewed the plea agreement with his attorney, that she had answered all his questions concerning the agreement, and that he was satisfied with his attorney's explanation and advice on the case. *Id*. at 21, 26. Mr. Aguilar also testified that no one had threatened, coerced, or otherwise forced him to accept the plea agreement, and that no one made any promises to him, other than those that were listed in the agreement, to get him to plead guilty. *Id*. at 23. Mr. Aguilar further testified that he was knowingly and voluntarily giving up his constitutional rights by pleading guilty. *Id*. at 24–25. Mr. Aguilar stated that he had no questions for his attorney or the court, and he then changed his plea to guilty on the relevant counts. *Id*. at 26–27. After taking Mr. Aguilar's plea, the court concluded that it would "accept the stipulations and find that [the] plea has been entered knowingly and voluntarily by Mr. Aguilar and [that] it was entered into on his own free will, not the result of any threats or promises other than what's contained within the Plea and Disposition Agreement." *Id*. at 28.

On October 6, 2017, counsel for Mr. Aguilar filed a sentencing memorandum in which she requested that Mr. Aguilar be sentenced to a term of five years' supervised probation with a conditional discharge on grounds that he: (1) lacked a felony or violent criminal history; (2) was remorseful and accepted responsibility early on for his conduct; (3) had a network of friends who had written letters of support on his behalf; and (4) posed no threat to the community, as evidenced by the fact that he had been on conditions of release for over two years since the underlying incident. *Id*. at 32–35. In addition, defense counsel represented that Mr. Aguilar was "seriously intoxicated and mentally impaired" the night of the incident, referring to it as "an alcohol-induced event stemming from a family feud" and an "isolated instance of violence due to extreme alcohol consumption." *Id*. at 32, 34, 37. Counsel noted that Mr. Aguilar admitted to having an alcohol problem and was attending counseling and Alcoholics Anonymous ("AA") meetings. *Id*. at 36. An attendance form attached to the sentencing memorandum indicated that Mr. Aguilar had attended several AA meetings and anger management groups. *Id*. at 58–60. The sentencing memorandum also included a letter from Mr. Aguilar in which he stated that on the night of the incident, he was "very, very intoxicated which triggered [an] emotional outbreak," and his "extreme state of drunkenness[] caused [him] to think and act irrationally." *Id*. at 48.

At Mr. Aguilar's sentencing hearing on October 6, 2017, the prosecution provided the following summary regarding the underlying incident: Mr. Aguilar and April Hale[3] were previously in a relationship.[4] *Id*. at 84. On the evening of March 21, 2015, Ms. Hale had dinner

---

[3] Ms. Hale stated her name was April Archibeque at the sentencing hearing. *See* Doc. 10-1 at 76.

[4] The parties disputed the status of Mr. Aguilar and Ms. Hale's relationship. The state claimed that the two stopped dating months before the incident, but Mr. Aguilar maintained that he and Ms. Hale were still dating at the time and continued their relationship for at least a year after the incident. Doc. 10-1 at 84, 98.

4

at home with her two sons, her nephew, her daughter, and her daughter's boyfriend. *Id*. at 88. Ms. Hale's nephew was loading dishes into the dishwasher while Ms. Hale and her daughter were sitting at the dinner table when Mr. Aguilar entered the home with three other individuals. *Id*. All four individuals were masked and carrying bats. *Id*. Mr. Aguilar went to Ms. Hale's home because he believed her sons had stolen tools from him. *Id*. at 83–84. A physical altercation ensued which resulted in injuries to Ms. Hale's nephew, daughter, and minor son. *Id*. at 88–90. Ms. Hale, her daughter, and her nephew each addressed the court during the sentencing hearing. *Id*. at 75–82.

Mr. Aguilar also addressed the court during his sentencing hearing, explaining that he was very intoxicated that evening and had not intended to hurt anyone. *Id*. at 100. Defense counsel echoed Mr. Aguilar's statements, reiterating that Mr. Aguilar's intoxication impaired his ability to reason and think clearly. *Id*. at 92, 94. Defense counsel argued that a term of five years supervised probation with a conditional discharge was an appropriate sentence because Mr. Aguilar: 1) had done well on pretrial supervision and release; 2) made no contact with the victims in the two years since the incident; and 3) was remorseful and was attending AA meetings as well as anger management counseling. *Id*. at 92–99.

The district court was not persuaded by defense counsel's sentencing argument. The court sentenced Mr. Aguilar to eighteen years in prison with eight years suspended, for an actual term of imprisonment of ten years, followed by five years of supervised probation and two years parole after release. *Id*. at 61; 64–65. In addition, the court found Count 2 to be a "mandatory violent offense" and found Counts 7 and 9 to be serious violent offenses "based on facts presented at the hearing that [Mr. Aguilar] came with a group, they were armed with bats, they were disguised, they caused both physical and emotional damage to the victims involved, and

5

they entered the residence with the intent to injure anyone in the home." *Id*. at 63–64. Accordingly, the court designated the first seven and one-half years of the term of imprisonment as "serious violent offense time." *Id*. at 64.

On December 19, 2017, counsel for Mr. Aguilar filed a motion seeking reconsideration of his sentence. *Id*. at 66–72. In the motion, defense counsel requested that Mr. Aguilar's sentence be reduced to a term of five years' imprisonment based on reasons similar to those previously raised in the sentencing memorandum—that Mr. Aguilar did not have a felony criminal history, was remorseful, and was seeking treatment for his alcoholism. *Id*. On December 22, 2017, the state filed a response in opposition to Mr. Aguilar's motion for reconsideration. *Id*. at 152–55. On March 7, 2018, Mr. Aguilar withdrew his motion for reconsideration.[5] *Id*. at 157.

Over the ensuing two years, Mr. Aguilar filed multiple *pro se* habeas petitions in state district court, a motion to reconsider his sentence, a motion seeking to withdraw his guilty plea, a docketing statement in the New Mexico Court of Appeals, and multiple petitions for writs of certiorari in the New Mexico Supreme Court. *Id*. at 165–66, 194–99, 239–324, 334, 373–84, 391–94, 432–36, 447–77, 479.

Not finding satisfaction in the state courts, Mr. Aguilar filed a petition for a writ of habeas corpus in this Court. Doc. 1. After reviewing the petition and answer, this Court found that Mr. Aguilar filed a "mixed petition" and had only exhausted three of his claims, including

1) that his attorney was ineffective because she did not know how to adequately represent him because she was not a criminal defense lawyer;
2) that his attorney was ineffective because she did not file proper motions in a timely manner and did not prepare an adequate plea; and

---

[5] Mr. Aguilar explains that he withdrew the motion for reconsideration because his attorney, Amy Sirignano, "quit on me because I expressed frustration with her representation. She then filed for Substitution of Couns[e]l in January of 2018 and the Public Defender Brittany Maldonado was reassigned to my case. Ms. Maldonado did not pursue the motion to reconsider." Doc. 10-1 at 166–67.

    3) that his attorney was ineffective because she did not adequately represent him/failed to counsel him so that he did not understand the plea or knowingly agree to it.

Doc. 14. The Court allowed Mr. Aguilar to elect to proceed on his exhausted claims. Mr. Aguilar accepted the Court's offer and filed a letter stating that he voluntarily dismissed his unexhausted claims and wished to proceed on his exhausted claims. Doc. 15. The Court now addresses Mr. Aguilar's exhausted claims.

## II. Federal Habeas Claims under AEDPA

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), there is a two-step inquiry. The threshold question is whether the applicant seeks to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved the unreasonable application of that clearly established federal law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)) (internal quotation marks omitted).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.  A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405.  The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id.*  Therefore, habeas relief under § 2254(d)(1) may be granted only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003).  The state court need not cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted).  "Rather, that application must be objectively unreasonable." *Id*. at 76.

Under AEDPA, state court findings of fact are "presumed to be correct."  28 U.S.C. § 2254(e)(1).  Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2)

must show by clear and convincing evidence that the determination was factually erroneous.  *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

**III.   Discussion**

Mr. Aguilar's exhausted claims invoke his Sixth Amendment right to counsel.  Doc. 1 at 5, 8 (alleging ineffective assistance of counsel).  The Sixth Amendment to the Constitution of the United States "recognizes the right to the assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 685, (1984).  The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Id*. at 686.  Courts evaluate ineffective assistance of counsel claims under the two-prong test described in *Strickland*.  The *Strickland* test is clearly established federal law within the meaning of § 2254(d).  *Cullen*, 563 U.S. at 189.  Under *Strickland*, a petitioner must show by a preponderance of the evidence both that his or her counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018).  Courts identify these prongs as the performance prong and the prejudice prong.  *See, e.g., Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).  "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012).

When this Court reviews a § 2254 ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 100–01.  A court reviewing an ineffective assistance of counsel claim under both AEDPA and *Strickland* is "highly deferential, and when the two apply in tandem, review is 'doubly' so." *Simpson*, 912 F.3d at 594 (quoting *Harrington*, 562 U.S. at

105). To obtain federal habeas relief from a state court decision denying an ineffective assistance claim on the merits, a petitioner first must show that the state-court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Jones v. Warrior*, 805 F.3d 1213, 1218 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)).

Each of Mr. Aguilar's exhausted claims have been adjudicated on the merits, and this Court must be deferential to the state court's resolution of petitioner's claims. Mr. Aguilar fails to demonstrate that the state courts' decisions are contrary to or involved an unreasonable application of clearly established law or are based upon an unreasonable determination of the facts. I therefore recommend that the Court deny Mr. Aguilar's petition with prejudice.

    A.    <u>Mr. Aguilar's First and Second Exhausted Claims are Conclusory and are Insufficient to Warrant Habeas Relief</u>.

In his first exhausted claim, Mr. Aguilar asserts that his attorney "is a white collar lawyer and not a criminal defense lawyer and was unfamiliar with sentencing guidelines and State Laws." Doc. 1 at 5, 17. Other than this conclusory statement, Mr. Aguilar provides no evidentiary support for his assertion. He does not identify which sentencing guidelines or state laws he contends his counsel was unfamiliar with and how that prejudiced the defense of his case. Mr. Aguilar's second exhausted claim is that his attorney was ineffective because she did not file proper motions in a timely manner.[6] *Id*. at 5. Mr. Aguilar does not identify which motions he believed his counsel should have filed or how this alleged omission prejudiced the

---

[6] Mr. Aguilar also accuses his counsel of not preparing "adequate representation plea [sic] for petitioner." Doc. 1 at 5. The Court discusses the plea in section III(B) below.

defense. Mr. Aguilar does mention, however, that his attorney filed a motion to continue the trial setting so that she would have time to prepare for trial. Doc. 1 at 15.

Mr. Aguilar's first and second claims are too vague and conclusory to warrant habeas relief. The Tenth Circuit has "repeatedly held that conclusory allegations are insufficient to warrant habeas relief for ineffective assistance of counsel." *Quintana v. Mulheron*, 788 F. App'x 604, 609 (10th Cir. 2019) (unpublished); *Johnson v. Raemisch*, No. 19-1044, 779 F. App'x 507, 515–16 (10th Cir. 2019) (unpublished) ("Vague, speculative, and conclusory allegations will not satisfy an applicant's burden under *Strickland's* prejudice prong." (citing *Stafford v. Saffle*, 34 F.3d 1557, 1564 (10th Cir. 1994)); *Kidwell v. Martin*, 480 F. App'x 929, 934 (10th Cir. 2012) (unpublished) ("We have repeatedly stated that such conclusory allegations do not satisfy *Strickland's* prejudice element.").

Aside from the conclusory assertions, Mr. Aguilar does not discuss the state court's ruling on either issue in his petition. Mr. Aguilar does not submit any authority or precedent that demonstrates that the state court decisions "[were] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). He further does not present any evidence that the state court decisions resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *See* 28 U.S.C. § 2254(d)(2). Mr. Aguilar therefore fails to show that he is entitled to federal habeas relief on his first and second exhausted claims.

> B. <u>Mr. Aguilar Cannot Demonstrate that his Attorney was Ineffective or Coerced him into Signing the Plea Agreement</u>.

Mr. Aguilar's third exhausted claim is that his attorney was ineffective because she did not adequately represent him and coerced him into signing the plea agreement. Doc. 1 at 8, 16.

11

Mr. Aguilar raised this claim in several ways over the course of his post-conviction filings.[7] At every turn, "having considered the petition and being sufficiently advised," the New Mexico Supreme Court summarily denied Mr. Aguilar's petitions.

Where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Cullen v. Pinholster*, 563 U.S. 179, 180–81 (2011) (citing 28 U.S.C. § 2254(d)(1)). In other words, federal courts may not hold evidentiary hearings on claims that the state court decided on their merits. *Id.* at 181; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted), *overruled on other grounds as recognized in Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Johnson v. Williams*, 568 U.S. 289, 293 (2013). When the state's highest court

---

[7] In his first state habeas petition, Mr. Aguilar alleged that his attorney made misrepresentations about the terms of the plea agreement and had him sign a plea agreement although he did not know what he was signing. Doc. 10-1 at 165. After considering the petition, the New Mexico Supreme Court summarily denied his petition. *Id*. at 238. In his second state habeas petition, Mr. Aguilar alleged his counsel was ineffective because she "coerced, tricked, and misled" him into taking the plea. *Id*. at 240. The New Mexico Supreme Court summarily denied Mr. Aguilar's second habeas petition as well. *Id.* at 385. Mr. Aguilar again accused his counsel of misleading him into signing the plea agreement in a docketing statement in the New Mexico Court of Appeals which construed it a habeas petition and transferred it to the New Mexico Supreme Court. *See* Doc. 11 at 9. The New Mexico Supreme Court again summarily denied Mr. Aguilar's petition. Doc. 10-1 at 527–28. In a third petition for writ of certiorari to the New Mexico Supreme Court, Mr. Aguilar alleged that his counsel had forced him into a plea agreement and erroneously advised him to accept the plea. *Id*. at 448–50. The New Mexico Supreme Court summarily denied his petition for a writ of certiorari. *Id*. at 478.

offers no explanation for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). The Supreme Court has held that the standard is "highly deferential" to state courts and "difficult to meet," as it "demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (quoting *Richter*, 562 U.S. at 101); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

Moreover, it is *petitioner's* burden to demonstrate that his claims were *not* adjudicated on the merits. *Simpson v. Carpenter*, 912 F.3d 542, 583 (10th Cir. 2018). Nor is this burden easily carried: even in a case where a state court issues an order that summarily rejects or wholly omits mention of some or all of a petitioner's federal law claims, "the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson*, 568 U.S. at 293. Only "[w]hen the evidence leads very clearly to the conclusion that a federal claim was overlooked in state court [does] § 2254 entitle[] the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id.* at 303. Mr. Aguilar neither argues nor demonstrates in his petition that his claims were not adjudicated on the merits. Consequently, each claim must be considered under AEDPA's deferential standard. *See* 28 U.S.C. § 2254(d).

Although the New Mexico Supreme Court summarily denied all of Mr. Aguilar's petitions, I am not persuaded that the evidence leads very clearly to the conclusion that a federal claim was overlooked by the state court.  Mr. Aguilar brought his claims to the attention of the New Mexico state's highest court four different times.  In each of the petitions before the New Mexico Supreme Court, he raised the issue that his attorney coerced him into signing the plea agreement.  For example, in the first petition he explained that he did not know what he was signing.  Doc. 10-1 at 165.  In the second, he provided additional details and explained that his attorney told him "to just sign it and she would make the necessary changes," and provided "affidavits" to support his assertion that his counsel coerced him into signing the plea agreement.  *Id.* at 240, 244–45.  In the third petition, Mr. Aguilar explained that his attorney misled him into signing the plea agreement.  *Id*. at 433–34.  In Mr. Aguilar's final attempt to convince the New Mexico Supreme Court that his attorney coerced and misled him into signing the plea agreement, he explained that "[n]othing in the hearing transcripts indicated that counsel advised him of the correct range" of years he could receive if he signed the plea agreement.  *Id*. at 449.  He further asserted that his attorney never explained he could receive an 18-year sentence.  *Id*. at 450.

Because the summary denial by the state court is an adjudication on the merits, this Court is deferential to the state's court's decisions and will not review Mr. Aguilar's claim de novo.  Instead, the Court looks at whether Mr. Aguilar establishes that the state-court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Mr. Aguilar does not make the requisite showing.

14

As with his first two claims, Mr. Aguilar does not direct the Court to any Supreme Court authority that shows the decisions in the state court is contrary to or involved an unreasonable application of clearly established Federal law.  Mr. Aguilar further cannot establish that the state court's decisions were unreasonable in light of the evidence present in the state court record.  At Mr. Aguilar's plea hearing, he unequivocally admitted that he knowingly and voluntarily accepted the plea agreement.  "It is beyond dispute that a guilty plea must be both knowing and voluntary."  *Parke v. Raley*, 506 U.S. 20, 28 (1992).  In the habeas context, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack."  *Thomas v. Addison*, 89 F.3d 851 (10th Cir. 1996) (Table), 1996 WL 330239, at *2 (unpublished) (quoting *United States v. Broce*, 488 U.S. 563, 569 (1989)).  Furthermore,"[s]olemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

First, the plea agreement signed by Mr. Aguilar includes language attesting that Mr. Aguilar had read and understood the terms of the agreement, that he had discussed his case and constitutional rights with his attorney prior to entering into the agreement, and that he understood the constitutional rights he was giving up by pleading guilty. Doc. 10-1 at 13.  Counsel for Mr. Aguilar signed the plea agreement after stating that:

> I have discussed this case with my client in detail and have advised the defendant of defendant's constitutional rights and all possible defenses.  I believe that the plea and disposition set forth herein are appropriate under the facts of this case.  I agree with the plea outlined in this agreement and its terms and conditions.

*Id*. at 14.

Second, at his plea hearing Mr. Aguilar testified that he had reviewed the plea agreement with his attorney, and that she had answered all of his questions with regard to what he was pleading to. *Id*. at 20–21. He testified that he understood that he was changing his plea to guilty on five charges, and that he understood that he had agreed to a sentence of zero to eighteen years. *Id*. at 21–22. Mr. Aguilar testified that no one had threatened him, coerced him, or otherwise forced him to accept the plea agreement. *Id*. at 23. He denied that anyone had made any promises to him other than those in the plea agreement to get him to plead guilty. *Id*. Mr. Aguilar denied that he was under the influence of drugs or alcohol, a mental or physical disability, or anything else that would impact his ability to understand what he was doing at the plea hearing. *Id*. at 24. He further agreed that he understood that he was giving up certain constitutional rights, such as a right to a speedy, public jury trial, the presumption of innocence, and the right to cross examine and confront witnesses. *Id.* at 24–25. He agreed that he was giving up these constitutional rights knowingly and voluntarily. *Id*. at 25. Finally, Mr. Aguilar testified that he was satisfied with his attorney's explanation and advice in his case, and he had no questions for his attorney or the court. *Id*. at 26. In light of this record, it was not unreasonable for the state court to accept Mr. Aguilar's testimony, made under penalty of perjury, that he was not coerced by his attorney when he signed the plea agreement.

Because Mr. Aguilar fails to carry his burden of establishing that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law, or that the state court's decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, he has not established a violation of his constitutional rights. I therefore recommend that the Court deny his petition for habeas corpus.

**IV.     The Court should Deny a Certificate of Appealability**.

Lastly, I address whether Mr. Aguilar is entitled to a certificate of appealability. No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only if Mr. Aguilar "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, Mr. Aguilar has failed to make the requisite showing of a violation of a constitutional right. Mr. Aguilar is not entitled to a certificate of appealability.

**V.     Recommendation**

For the reasons stated above, I recommend that the Court deny Mr. Aguilar's petition for a writ of habeas corpus, deny a certificate of appealability, and dismiss this case with prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id*. **In other words, if no objections are filed, no appellate review will be allowed.**

 

Laura Fashing
United States Magistrate Judge